HEARD APRIL TERM, 1878.

CASE No. 625.

G. D. CARRIER v. W. WASH. THOMPSON.

1. An execution which has lost its active energy, may be renewed by the written consent of the judgment debtor, endorsed on the execution and signed by him, without the service of a summons, there being no fraudulent collusion between the plaintiff and defendant in such execution. *Guignard* v. *Glover, Harp.* 457, sustained.

2. An execution issued prior to the adoption of the code has a lien upon the personal property of the defendant, even after the expiration of its active energy. *Warren, Wallace & Co.* v. *Jones,* 9 *S. C.* 288.

3. Such lien also attaches to personal property of the execution debtor, acquired after the adoption of the code.

4. A sale by a constable under a junior execution issued by a trial justice, will not divest the lien of a senior execution issued in 1869 from the Court of Common Pleas. *Blair & Alexander* v. *Horseby, Dud.* 357, and *Lemmond* v. *Short,* 3 *Strob.* 313, *doubted,* and the cases in this state upon the subject reviewed.

Before KERSHAW, J., at Spartanburg, April, 1878.

The facts of the case are sufficiently stated in the opinion of the court.

Upon the trial on appeal in the Circuit Court, the presiding judge signed the following order:

The court finds as matter of fact, that the defendant had no lawful authority to levy upon the mule in dispute.

And as matter of law, that the plaintiff is entitled to the possession of the said mule, now in his possession, under his replevin bond.

It is therefore ordered and adjudged that the appeal herein be dismissed, with costs.

The defendant appealed to this court, upon the grounds that his Honor erred:

1. In holding that an execution issued on December 4th, 1869, upon a judgment rendered on December 1st, 1869, could not be

renewed by the written consent of the defendant in execution, after the expiration of seven years from the original entry of the execution, without application to the court.

2. In holding that the defendant had no lawful authority to levy on the mule in dispute, when the evidence showed that the defendant acted under an execution regularly renewed by the written consent of the defendant in execution.

*Messrs. Bobo & Carlisle,* for appellant.

The execution of 1869 was a lien upon all the property, real and personal, of J. P. Peace, and did not lose its lien by losing its active energy. 1 *Bay* 295; 1 *McC.* 414.

The levy and sale by the constable could not divest the lien of a senior judgment of the Circuit Court, and therefore could confer no title to the purchaser. The trial justice's execution of 1878 did not constitute a lien until actual levy. 1 *Hill* 277; 1 *Hill* 286.

After the expiration of its active energy, an execution may be renewed by consent of the defendant in execution without application to the court by *scire facias. Harp.* 457.

If execution was irregularly renewed, objection cannot be made by third persons. 2 *Strob.* 220; 1 *Bail.* 513; 1 *Nott & McC.* 408.

*Mr. J. S. R. Thomson,* for respondent.

Even if the sheriff's second execution had been properly issued, he would have had no right to levy it upon the mule bought by respondent. The Code, § 316, and its amendments (15 *Stat.* 872) provide that an execution should create no lien on personal property except by levy. If the mule had been Peace's before the passage of the code (and the *onus* of proving that was on appellant) Cash's execution would be a lien. But the change in the law was a mere change in the remedy—that lien should date from levy and not from entry—and does not impair the obligation of the contract. *Sedg. Stat. and Cons. L., pp.* 635, 644; *note* 350, 659.

If there was lien, it may well be doubted whether constable's levy would not have divested it. *Dud.* 358.

The execution upon which the levy was made by respondent was issued without authority of law. Code, § 306; 15 *Stat.* 872; *Sedg. Cons. & Stat. L.* 31, *note a.*

October 29th, 1878. The opinion of the court was delivered by

McIver, A. J.   This was an action to recover the possession of a mule, brought before a trial justice, where the plaintiff had a verdict, which, on appeal to the Circuit Court, was sustained; and this is now an appeal from the judgment of the Circuit Court.   The plaintiff claimed the mule under a sale made March 2d, 1878, by a constable, under a judgment rendered by a trial justice in 1878.   At this sale the defendant, as sheriff, gave notice that the mule, which was about being sold, was subject to the lien of an older judgment, and that the purchaser must pay the purchase money to him.   He, however, did not object to the sale.   The plaintiff paid the purchase money to the trial justice, which was by him applied to the satisfaction of the said execution in favor of H. H. Thomson, and another execution in his office junior to that.   On March 12th, 1878, the defendant, as sheriff, levied upon the mule in the possession of the plaintiff, under an execution lodged in his office on March 2d, 1878, which was a renewal of an execution originally lodged on December 4th, 1869, issued to enforce a judgment obtained in the Court of Common Pleas on December 1st, 1869; and under this levy the defendant claimed.   This execution was not renewed in the usual form, by issuing a summons, but under an acknowledgment endorsed upon the original execution, and signed by the defendant in the execution in the following words : " I acknowledge that the judgment in this case has not been paid, and consent that this execution be renewed against me, without application to the court.   March 2d, 1878."

It is contended by the respondent—*First.* That the execution under which appellant claims the property in dispute, was issued without authority of law, inasmuch as the only mode in which an execution can be renewed after the expiration of its active energy is that prescribed by the code, as amended by the act of November 25th, 1873 (15 *Stat.* 499), viz., by the service of a summons upon the judgment debtor; and that the written con-

F

sent of the judgment debtor will not dispense with the necessity for the service of a summons, and hence that the levy made under this execution, so illegally issued, conferred no title on the sheriff. It will be observed that the language of the act referred to is merely permissive, not imperative: "But after the expiration of its active energy, as aforesaid, the same *may be* renewed by the service of a summons on the judgment debtor, his heirs, executors or administrators, to show cause, if any he or they may have, why the same shall not be renewed; and if no sufficient cause be shown, the same may be revived." Now, as the only object in issuing the summons is to give the opportunity to the judgment debtor to show cause why the execution should not be renewed, it is difficult to conceive of any reason why the observance of this mere form, not imperatively required, should be demanded, where it appears in writing, upon the record, not only that the judgment debtor has no cause to show, but actually consents to the renewal. Hence, even in the absence of any authority, we would be disposed to hold that an execution may be renewed by the written consent of the judgment debtor, without the service of a summons, in the absence of allegation and proof of fraudulent collusion between the plaintiff and defendants in such execution, (and there is none such here.) But the point has been distinctly decided in the case of *Guignard* v. *Glover*, *Harp*. 457, and is therefore no longer open to question.

*Second.* The respondent contends that even if the execution under which the levy was made is held to have been properly issued, it had no lien on the property in question, and therefore no title could be acquired by such levy. This proposition is based upon the idea that an execution issued since the adoption of the code, upon a judgment obtained prior to that time, has no lien upon personal property until it is levied. We had occasion, in the recent case of *Warren Wallace & Co.* v. *Jones* (MS. decision, filed March 9th, 1878*), to consider this question, and to show that the code, as modified by the amendatory act of November 25th, 1873, could not be so construed as to defeat the lien which such an execution had, even after the expiration of its active energy, upon the personal property of the judgment debtor;

_____

* 9 *S. C.* 288.

and we deem it unnecessary to encumber this opinion with a repetition of the argument and authorities upon which such conclusion was based.

It is argued, however, in this case, that while this may be true so far as the lien upon property in the possession of the judgment debtor, at the time of the adoption of the code, is concerned, it would not apply to subsequently-acquired property, and that the *onus* was on the appellant to show that the property here in dispute was in the possession of the judgment debtor at the time of the adoption of the code, in order to bring it within the lien of the execution under which appellant claims. But it must be remembered that executions prior to the code were a lien not only upon the property of the debtor then in his possession, but also upon all that he might thereafter acquire. *Brown* v. *Gilliland,* 3 *Desaus.* 539 ; *Grooms* v. *Dixon,* 5 *Strob.* 149. Such being the law at the time of the recovery of the judgment upon which the execution in question was issued, and at the time when the contract was made upon which the judgment was founded, the rights of the judgment creditor must be determined by the law as it then stood, and cannot be abridged by subsequent legislation. For, as this court has said in the case of *Cochran* v. *Darcy,* 5 *S. C.* 127, adopting the language of the Supreme Court of the United States in the case of *Gunn* v. *Barry,* 15 *Wall.* 610 : " The legal remedies for the enforcement of a contract which belong to it at the time and place where it is made, are a part of its obligation. A state may change them, provided the change involve no impairment of a substantial right." Now, here the substantial right which the judgment creditor had when his contract was made, was the right to a lien upon all his debtor's property as soon as he recovered his judgment and issued his execution—as well upon that which he then had as that which he might subsequently acquire ; and to take away the latter would certainly be the " impairment of a substantial right." Indeed, it is difficult to conceive how, if it is unconstitutional for a state to pass a law withdrawing *a certain portion* of property of a specified kind from the lien of an execution obtained upon a contract entered into before the passage of such law as has been determined by the homestead cases, it would

not be equally unconstitutional to pass a law withdrawing *all* of another class of property from the lien of such an execution.

Finally, it is argued by the respondent that the lien of the execution under which the appellant claims, was divested by the sale made by the constable under the execution issued to enforce the judgment obtained before the trial justice. This proposition cannot, in our judgment, be maintained, for the judgment and execution issued by the Court of Common Pleas being the oldest in date, it must certainly take precedence of that issued by the trial justice. *Kerr* v. *Montgomery*, 1 *Hill* 277; *Robertson* v. *Cooper*, 1 *Hill* 286.

The proposition contended for by respondent is based upon an inference merely drawn from the point decided in *Blair & Alexander* v. *Horseby*, *Dud.* 357, for certainly the case does not establish any such proposition; and, on the contrary, Richardson, J., in delivering the opinion of the majority of the court, expressly says, in speaking of the sale by a constable under a magistrate's execution, junior in date to the execution from the Court of Common Pleas: "It may be *questionable* whether the sale of the horse was not valid, inasmuch as there had been no previous levy under the senior execution." And again he says: "Supposing the proper rule to be either for or against the validity of the constable's sale," &c., showing very clearly that this case does not decide the point contended, nor does it even contain a *dictum* to the effect. So that, giving the case *its* full weight as authority, it furnishes no ground for saying that the sale of property by the constable, bound by the lien of a senior *fi. fa.*, issuing from the Court of Common Pleas, under a junior execution, issued out of an inferior court, divests the lien of the senior *fi. fa.* and confers a good title on the purchaser. But we do not desire to be understood as committing ourselves to the correctness of the decision in *Blair & Alexander* v. *Horseby*. That case was decided by a bare majority of one in a court at which only five judges were present, and as the judge who delivered the opinion of the majority expressed himself in somewhat doubtful terms upon a point which seems to lie at the foundation of the whole question, and as there seems to be great force in the reasoning employed by Butler, Judge, in the dissenting opinion, concurred

in by Evans, J., it may be necessary, when a proper occasion presents itself, to review that decision; especially as it appears to be somewhat inconsistent with other cases on the subject. But as the question does not necessarily arise in the case now under consideration, and was not therefore argued, we do not propose to enter upon the discussion of it further than to present a brief abstract of the cases upon the subject, indicating the points of inconsistency.

There can be no doubt that prior to the adoption of the code of procedure, executions were liens upon personal property from the date of their lodgment in the sheriff's office, even after they had lost their active energy. *Snipes* v. *Sheriff of Charleston*, 1 *Bay* 295; *Brown* v. *Gillilland*, 3 *Desaus.* 539; *Greenwood* v. *Naylor*, 1 *McC.* 414. Indeed, as Nott, J., says in *State* v. *Laval*, 4 *McC.* 342, in speaking of this doctrine: "It is peculiar to this state; but it is too well established now by a series of decisions to be controverted." And as Harper, J., says, in *Mitchell* v. *Anderson*, 1 *Hill* 73, in speaking of these decisions: "The doctrine established by them has been too long and too firmly settled to be shaken now." If this be so, then it would seem to follow, necessarily, that the sale of property so bound by the lien of an execution, whether made by the execution debtor himself, or by a mortgagee under a junior mortgage, or by a constable under a junior execution from an inferior court, would be made subject to such lien, and the property in the hands of the purchaser would still be bound by the lien of the senior execution.

The cases which treat more especially of the effect of a sale of personal property made by the officer of an inferior court, under an execution issued by such court upon the lien of a senior execution issued out of a superior court, are the following: *Greenwood* v. *Naylor*, 1 *McC.* 414; *Kerr* v. *Montgomery*, 1 *Hill* 277; *Robertson* v. *Cooper*, 1 *Hill* 286; *Blair & Alexander* v. *Horseby*, *Dud.* 357; *Alexander* v. *Collins*, 3 *Rich.* 62; *Lemmond* v. *Short*, 3 *Strob.* 313.

The case of *Greenwood* v. *Naylor*, decided in 1821, was a contest between two execution creditors, one of whom had lodged his execution, which was senior in date, *in the office of the sheriff of Charleston district*, with an endorsement in these words:

"Lodged to bind;" which were construed to operate as a stay of the execution; while the other had lodged his execution, junior in date, in the office of the city sheriff, with instructions " to levy and sell." Personal property was sold by the city sheriff under the execution in his office, and upon a rule he was required to pay the proceeds of the sale to the senior execution lodged in the office of the district sheriff. The court, in this case, treated the question as if both executions had been lodged in the same office, and the only point really decided in the case is, that an execution which has been stayed does not thereby lose its priority over a junior execution under which the sale was made. The fact that the executions were lodged in different offices, seems to have received little or no attention at the hands of the court, and therefore the case throws but little light upon the question in the case under consideration. The case of *Kerr* v. *Montgomery*, decided in 1833, was this: The sheriff levied upon a wagon under executions in his office, and left it in possession of Brown, the judgment debtor; afterwards the plaintiff, as constable, levied on the wagon under a junior execution issued by a magistrate, sold it, and having bid it off himself subsequently sold it to the defendant. The wagon was then seized in the hands of the defendant by the sheriff and sold under the original levy. The action was brought by the constable to recover the amount for which he had sold the wagon to the defendant, who defended himself upon the ground that the sale by the constable conferred no title as against the lien of the senior executions; and his defence was sustained.

This case would seem to be conclusive of the question in the case now before the court. It is true that in the case of *Kerr* v. *Montgomery*, the senior executions had been levied, before the levy and sale by the constable, but that circumstance could have had but little, if any weight, in the decision, as it is not even alluded to in the opinion of the court, and on the contrary the decision is placed upon the ground that the property when sold by the constable was bound by the lien of the senior executions, the language used being: "The *fi. fa.'s* lodged in the sheriff's office against Brown, before the seizure of the wagon, in execution by the constable, were legal liens upon it, and the sale under

them, after the constable's sale and purchase by himself, and his subsequent sale to the defendant, was a regular eviction of the defendant, by a paramount title." And while Richardson, J., in *Blair & Alexander* v. *Horseby*, does seem to attach some importance to the fact that the senior executions had been levied before the sale by the constable under the junior execution, that fact is treated by the court as of no importance in the subsequent case of *Lemmond* v. *Short.* Indeed, if, as the law then stood, an execution had a lien from the time of its lodgment without levy, it is difficult to conceive how the circumstance that the execution had, or had not, been levied, could affect the question.

*Robertson* v. *Cooper*, also decided in 1833, was this: The plaintiff as constable, levied on certain personal property under a magistrate's execution, which was then bound by the lien of a senior execution lodged in the sheriff's office. On the day of sale the sheriff attended with his execution and levied on the property. It was agreed, however, that the sale should proceed, and, if it should be decided by the court that the constable had no right to sell, then the purchase money was not to be paid. The defendant purchased with this understanding, and gave his note to the constable for the amount of his bid. In an action on this note the plaintiff was non-suited, and the non-suit was sustained by the Court of Appeals; the court holding, that while the rule of *caveat emptor* applies to sales made under process from a court of general or inferior jurisdiction, yet it may be waived or varied by express agreement, as was done in this case; and that the sale by the constable conferred no title. In delivering the opinion of the court, O'Neall, J., uses this language: "In this case the true and only question is, * * * has an execution lodged in the sheriff's office priority over a constable's execution junior in date? There can be no difficulty in answering this question in the affirmative. An execution from a court of general jurisdiction binds the goods of the defendant from the day on which it is lodged in the sheriff's office." It is true that Judge O'Neall throws out the suggestion that if the proceeds of the constable's sale be applied to the senior execution its lien would be discharged, but this was not at all necessary to the decision of the question before the court, and was therefore,

as said by Butler, J., in his dissenting opinion in the case of *Blair & Alexander* v. *Horseby,* not " obligatory either on himself or on the court." Indeed, it is obvious from the language used by Mr. Justice O'Neall, while throwing out this suggestion, that he did not design to endorse the doctrine contended for in the case now under consideration; for he says, after deciding the real points arising in the case: " But it is perhaps necessary in this case to go further, and to make it the occasion of considering and deciding the effect which the lodgment of an execution in the sheriff's office might have on sales under levies subsequently made of magistrates' executions; I admit, in the outset, [as we do] that a sale by a sheriff under a junior execution would be good. For having actually or constructively, both executions, the whole authority of the law is in him to make the sale, and it is his duty to apply the proceeds correctly. The lien on the goods is discharged by his sale; for his levy vests the property in him for the purpose of satisfying the liens by execution subsisting on the property. But, I apprehend, a totally different question is presented when it is contended that the levy of an execution of an inferior jurisdiction is to divest the prior lien of an execution of a superior jurisdiction. To discharge the lien of the latter, the proceeds of the sale must be paid over to it; for it is an encumbrance on the property entitled to be levied on it, to the extent of its value. If the proceeds of the sale are paid over to it, it is, in effect, a levy and sale of the goods under it. But, if the sale by the constable under a junior levy, [execution?] could discharge the lien without paying over to the senior execution the proceeds, it would be an easy mode of defeating it, and would, in effect, authorize the defendant to alien his own property."

The case of *Blair & Alexander* v. *Horseby,* decided in 1838, was this: The defendant, as constable, sold a horse as the property of one Black, under several magistrates' executions in favor of third persons. The plaintiff, having an execution of older date, issued out of the Court of Common Pleas, of which notice was given to the constable before the sale, he was forbidden to sell. He, however, sold the horse, and the plaintiffs brought this action to recover, as is stated in the report of the case, " the

amount of their judgment and execution"—doubtless meaning the amount of the proceeds of the sale; because certainly the defendant could not, in any view of the case, be made liable for more than he received—the proceeds of the sale. The Circuit judge decreed for plaintiffs, and on appeal his decision was sustained. It is very manifest, as shown by Butler, J., that the principle decided by this case cannot be applied in cases where there are several executions in the sheriff's office, of the same or of different dates, without leading to great and unnecessary confusion, or at least to results that could not readily be accepted. If the several executions are of the same date, then the question would arise, "Which plaintiff shall have the power to elect and recover the money in the hands of the constables?" Or, if of different dates, "Shall the senior creditor have this power alone? If so, he is made the exclusive judge of the liens of others, without their option or control." For surely it could not be held that the constable was liable to the senior execution creditor for the proceeds of the sale, and still the property in the hands of the purchaser be liable to the lien of other executions senior in date to the magistrate's execution under which the constable made his sale. "If the senior execution creditor has exclusively the right to decide on the matter, he may very well save himself, while he compromises the rights of others. To illustrate the case: Suppose that a horse worth $500 should be sold by a constable for $50, and that a creditor with the oldest execution in the sheriff's office should make his election and apply $25 to the payment of a balance to that amount, due on his execution, must the junior creditor be compelled to take the remaining $25, and forego his right of selling the horse for $500, under his execution, by which he could have got $475, instead of $25?" These, and other considerations not necessary to be adverted to now, may well create a doubt whether it would not be better to hold that where property bound by the lien of a senior execution, in the sheriff's office, is sold by a constable under a junior execution, that it is sold *subject to the senior lien,* and remains liable in the hands of the purchaser to the satisfaction of such lien; and therefore that the senior execution creditor has no *lien on the proceeds of such sale,* and is not entitled to recover them. It is

undoubtedly true, as established by the case of *Paysinger* v. *Shumpard*, 1 *Bail.* 237, that where one purchases property at private sale, subject to the lien of an execution, of which he has express notice, and subsequently sells the same, he cannot be made liable to the execution creditor, either for the amount he paid for such property or for the amount for which he may have sold it. For, as said by Colcock, J., in that case: "The lien is on the property alone; and a third person coming into possession of it incurs no *personal liability* to the creditors." It is impossible to reconcile the case of *Paysinger* v. *Shumpard* with that of *Blair & Alexander* v. *Horseby:* and although the former was decided in 1829, and the latter nine years later, the one does not, even by implication, overrule the other; for the former is cited and recognized as authority in the latter, both in the opinion of the majority and minority of the court. For although in the one case the property was sold at private sale, and in the other by a constable under a magistrate's execution, it is difficult to see how this can affect the question under consideration, though it would make a vast difference if the sale under the junior execution was made by the sheriff, for the reason stated by O'Neall, J., in the case of *Robinson* v. *Cooper, supra,* and for the further reason that when a sheriff has several executions in his office, and advertises and sells under one which proves to be invalid, yet nevertheless the sale shall be valid if there is any other good execution in his office at the time; because, in selling he acts under *all* of the executions in his office, and if *any one* of them be sufficient to authorize the sale, the sale will be valid. Hence, when he sells under a junior execution, the sale is made by authority of the senior as well as the junior execution, and the lien of *all* the executions upon the property is thereby divested, and the title of the purchasers is unaffected by such liens. *Vance & Davis* v. *Red & Young,* 2 *Spear* 90; *Arnold* v. *Mc-Kellar,* (MS. decision filed March 18th, 1878.\*)

The next case on the subject, *Alexander* v. *Collins,* decided in 1846, was as follows: A constable levied on certain property of A. & C., under a magistrate's execution, which was bound by a senior execution issued out of the Common Pleas and lodged in

---

\* 9 *S. C.* 335.

the sheriff's office. The plaintiff, Alexander, who was sheriff, notified the constable of this senior execution, previous to the sale, and required payment of the proceeds of the sale to be made to the senior execution. The constable refusing to do so, this action was brought by Alexander, as sheriff, to recover such proceeds; when it was held that he could not recover. It is true that this decision was based upon the ground that the plaintiff, as sheriff, before he had levied, had no such right as enabled him to bring the action, and the case therefore cannot be regarded as in direct conflict with *Blair & Alexander* v. *Horseby*. But Wardlaw, J., in delivering the opinion, does seem to intimate doubts of the authority of that case. His language (the italics being ours) is: "The case of *Blair & Alexander* v. *Horseby, Dud.* 357, may be authority for maintaining that *a plaintiff* in a Circuit Court execution, waiving his right to pursue property of the defendant which was bound by the lien of his execution, and has been sold by a constable under a magistrate's execution, may, after the notice, recover from the constable the proceeds of the sale in his hands. But the general lien of an execution cannot give to *the sheriff* a right so to recover. After the levy the sheriff acquires an interest in the specific property levied upon, which will sustain his action of trover or trespass against a constable or other person. This interest would, in a contest between the sheriff and a constable who had levied before the sheriff's levy, but after the lien of the execution in the sheriff's hands attached, have relation back to the commencement of the lien, so as to take the property from the constable, or a *purchaser from him*." The fact that Judge Wardlaw uses such terms in speaking of the case of *Blair & Alexander* v. *Horseby*, and the further fact that he dissented in the subsequent case of *Lemmond* v. *Short*, would seem to indicate that he agrees with Butler and Evans, JJ., in their dissent from the point decided in *Blair & Alexander* v. *Horseby*.

The last case upon the subject is *Lemmond* v. *Short*, decided in 1848, in which it was held that where a constable had sold property subject to the lien of an execution from the Court of Common Pleas, after notice from the sheriff that he would claim the proceeds of the sale as applicable to the execution in his

office, and the plaintiff in such senior execution had become the purchaser at the sale, the constable could not recover the amount of his bid from such purchaser because it was applicable to the execution in the sheriff's office, although it had never been levied, and therefore, under the authority of *Cobb* v. *Pressly*, 2 *McM.* 416, such purchaser, under these circumstances, could not be required to · pay the money to which he was entitled under his execution even to the sheriff, and consequently not to the constable. This case does recognize the authority of *Blair & Alexander* v. *Horseby;* but at the same time recognizes the cases of *Kerr* v. *Montgomery* and *Robertson* v. *Cooper* as deciding the point in issue in the case now before the court, viz., that a sale by a constable, under a junior execution issued by a magistrate, will not divest the lien of a senior execution from the Court of Common Pleas, and consequently confers no title on the purchaser as against the lien of such senior execution.

Consequently, whether the cases of *Blair & Alexander* v. *Horseby* and *Lemmond* v. *Short* be or be not considered as authority, the conclusion which we have reached in the case now before the court cannot be affected thereby. The most that they establish is, that the plaintiff in the senior execution *may elect* to pursue the funds in the hands of the constable arising from the sale made by him; not that he is *bound* to do so.

The judgment of the Circuit Court is set aside, and a new trial ordered.

Judgment set aside.

WILLARD, C. J., and HASKELL, A. J., concurred.